JACK W. SCHIFFER, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 83249.   Promulgated January 20, 1939.

*Walter H. Liebman, Esq.*, for the petitioner.
*S. L. Young, Esq.*, for the respondent.

**OPINION.**

MURDOCK: The decision of this case turns upon a question of fact, i. e., were the General Cigar Co. shares and the Van Camp Packing Co. shares held by the partnership primarily for sale in the course of its business. If they were so held, then the shares were not capital assets within the meaning of that term as defined in section 101 (c) (8) of the Revenue Act of 1932, the loss from the sale of the shares was not a capital loss, and the loss should be deducted from the gains of the partnership from the sales of other securities in determining the petitioner's distributive share of the net income of the partnership. Cf. *Charles Wesley Purdy*, 36 B. T. A. 572. It is conceded that the partnership was regularly engaged in the business of trading in securities for profit. We have found as a fact that the securities in question were held, at all times material hereto, primarily for sale in the course of the partnership's business of trading in securities for profit.

The respondent has contended that the intention of the partnership in holding these securities must have been different from its intention in holding all of the other securities in account No. 67, since these alone were held for more than two years, whereas all

of the others were sold soon after they were purchased. Obviously the mere holding of the securities for more than two years is not fatal to the contention that the securities were held primarily for sale in the course of the taxpayer's trade or business, since such a situation would deprive the words of section 101 (c) (8) of all meaning and significance. Cf. I. T. 2948, C. B. XIV–2, p. 158. The petitioner testified that these particular securities, like all of the others, were purchased and held at all times primarily for sale in the course of the partnership business of trading in securities for a profit. He explained that the Van Camp Packing Co. shares were purchased, upon the recommendation of a friend of his partner, in the belief that the market price of the shares would increase and the partnership would have a good chance to sell them at a substantial profit; the shares declined in value so that the partnership never had a chance to sell them at a profit; and, when they finally became almost worthless, the partnership ceased to pay much attention to them, but merely retained them in the hope that they might some time increase in price. He explained that he was quite familiar with the affairs of the General Cigar Co., of which he was a director; the company was enjoying a prosperous year in 1929 when the shares were purchased, and he thought the price would increase; however, the price fell off when the crash came in the stock market, but the petitioner continued to believe that the stock had a value in excess of its current market price, because the company was continuing to have good business up to 1933; the company had a large inventory loss in 1933 and its earnings decreased; the petitioner then came to the conclusion that the partnership should sell the stock at once rather than wait longer for the market price to more nearly approach what he regarded as the true worth of the shares.

The respondent contends that the petitioner's testimony in explaining why the General Cigar Co. stock was held for such a long period shows that the stock was not held during all of that period primarily for sale. He points to the fact that the market price of the stock increased at various times during that period, and he argues that the firm would have sold the stock during one of those flurries, if it really was holding the stock primarily for sale in the course of its trade or business. Obviously a taxpayer may decide for himself when and under what circumstances he will sell his stock, even where he is holding it primarily for sale. Many taxpayers, holding stock primarily for sale in the course of their business of trading in stocks for profit, have missed favorable opportunities to sell. If a taxpayer holds a security too long in the hope of obtaining a higher price, that circumstance does not prove that he is not holding the security primarily for sale in the course of his business. We have taken into

consideration all of the evidence in this case and have considered all of the arguments of counsel in making the finding of fact which decides this case.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

———

HARRON, dissenting: The partnership of Toerge & Schiffer carries on a business as trader in securities. It is not a dealer. In 1933 it traded in approximately 91,000 shares of stock and $160,000 par value of bonds. The total cost of securities purchased in 1933 was $3,076,082.25, and the cost of securities sold was $3,257,690.48. From 1929 through 1933 all securities purchased for trading account No. 67 were sold within two years of the date of purchase and a majority of the securities were sold within periods ranging from a few days to six months of the date of purchase except the shares of General Cigar and Van Camp stocks involved in this proceeding. Petitioner was a director of the General Cigar Co. during the period from 1929 to 1933. He was not a director of any other company whose securities the partnership purchased in its trading transactions. The record does not show whether petitioner owned, as qualifying shares of a director of the General Cigar Co., any shares other than those involved in this proceeding. But there is a coincidence in the facts that petitioner was a director from 1929 to 1933 and that is the same period during which the partnership held the General Cigar stock. All the above facts are of significance.

It is true that decision of the question in this proceeding is a fact question. It is also true that the petitioner has the burden of proving a negative proposition, namely, that the General Cigar stock was not a capital asset, although held for more than two years. In attempting to come within the exception provided in section 101 (c) (8), petitioner has argued that, in general, securities held by a trader in securities for more than two years must always be excepted from the statutory classification of capital assets and that the reasons for holding securities for more than two years are not important because such securities are always purchased for sale in the business. However, the test set forth in section 101 (c) (8) to gain exception from classification as "capital assets" relates to the purpose of holding property. The property must be held primarily for sale. In any proceeding in which a trader in securities claims the benefit of the exception in section 101 (c) (8) the fact question is bound to be a close question. But there is always present the inescapable fact that it is the nature of the trading-in-securities business to make quick turnovers in capital. Liquidity of capital is a primary considera-

tion in the trading business and net profits are made by transactions on the market that may be frequent compared to the transactions of one who is not a trader and that minimize or eliminate loss by the skill of the trader. Also, a trader occupies a different position from a dealer in securities who carries an inventory of securities for sales to customers and who is less able to recoup losses by trading transactions. Trading in securities may not always consist of selling securities at a profit. There is no evidence in this proceeding that every sale in the trading account No. 67 was made at a profit. A trader may make some sales at a loss but recoup such loss in later transactions, according to his astuteness in judging and taking advantage of the fluctuations of market prices. Therefore, it is entirely material to deciding such question as is present here, to weigh the reasons for holding a particular stock for more than two years. An original purpose to trade in a stock may be abandoned and the stock may be held for other reasons than for sale in the course of business.

Petitioner has testified that the General Cigar stock was purchased for the purpose of making a profit, i. e., the stock was purchased in a trading account with the hope of making a profit. There is some inconsistency in petitioner's position that the purpose in acquiring the General Cigar stock to make a profit required that the stock be held for over four years so that it could be sold at a profit. The net profits made by a trader may accrue after a series of trading transactions, some of which may result in loss, and others, in gain. Trading operations may be and are carried on in the usual course of that business to minimize losses. As a matter of fact, the General Cigar stock in question was finally sold in 1933 at a loss. Nevertheless, during the period this stock was held, there appears to have been a fairly good market for trading in General Cigar stock and it is conceivable that, if the original purpose of trading in this stock had been adhered to, the partnership might have realized a net gain or considerably less loss out of *trading* as the market prices fluctuated up and down.

Under such circumstances as set forth above, considerable weight attaches to the reasons why the particular stock received such exceptional treatment as to be held for over four years.[1]

Petitioner was asked on direct examination whether there was any reason in his knowledge why the General Cigar stock was held for over two years. He testified as follows:

A. * * * I was a director of the General Cigar Company and was in intimate contact with what was going on in the company, and in 1929 I knew

---

[1] The facts show that from 1929 to 1935 the partnership dealt in over 456,000 shares of stock in the trading account, involving a total cost of over $32,000,000. Over the five-year period the General Cigar and Van Camp stocks were the only stocks held for more than two years.

that they were enjoying a very, very prosperous year, and when we purchased these stocks at 69⅞ the outlook was exceedingly good, and when the crash came in November the stock was selling lower than we paid for it, but on account of the good earnings that the company was making that year I felt that it was foolish to sell these securities at a loss. The stock in 1929 had a low of 42, and a high of 74. The earnings for that year were in the neighborhood of $8, and it was on that account that the stock was selling so few times its earnings that I felt that the price of the stock had over-discounted anything that might happen to the company. The company continued to do well in 1930 and 1931. In 1930 they made $6 and the high and low on the stock was 61 and 30. In 1931 the stock company made $5 and the high and low was 25 and 48½. In 1932 the company continued to do well and made $3.61, and as it had done so well in some of the severe years of depression, I thought that the price of the stock was still too low to sell and it would ultimately come back. In 1933, however, they ran into a tremendous inventory loss, and while the operating profits were good, they took that loss that year— the loss on this leaf tobacco. They only made 79¢. And in June of 1933 I did change my mind on the company and thought it wise that we sell the stock.

This line of reasoning persisted for four years. When the General Cigar stock was finally sold at losses in 1933, the factor that brought about the decision to sell was that General Cigar Co. in that year earned only 79 cents a share. Then petitioner changed his mind about the company. The General Cigar stock was sold at prices ranging from $39 to $45 in 1933, which prices were less than the range between high and low prices in 1930, one year after purchase of the stock. Trading in this security appears not to have been the primary consideration for holding it over four years.

If due weight is given to the above testimony, it would appear that the petitioner has not succeeded in proving that the stock was held for more than two years "primarily for sale" in the course of business. The above testimony shows that the reasons for holding the stock in question were founded preponderately on considerations relating to intrinsic value of the stock, earnings, conditions of the business. Little if any consideration appears to have been given to the comparative and possible advantages of trading in the stock on the market during the entire period. There is totally lacking here any condition that can be termed accurately as unfortunately missing favorable opportunities to sell. The partnership just did not consider any of the selling opportunities over four years.

Therefore, I dissent from the majority holding as to the General Cigar stock.

TURNER, MELLOTT, HILL, DISNEY, and KERN agree with this dissent.